and counsel appointed through our pro bono program and again we thank counsel for at you and your firm for your services both today and in briefing and as before I think counsel for the government also appreciates that sometimes it's easier to address these cases when we do have such excellent briefings so we thank you thank you your honor good morning may it please the Demarcy and I represent the petitioner Colette Dunton in this case when she was a very small child in the first and second years of her education Colette missed about half of every year of school and she missed half a year of school because she spent that time being raped and filmed by a ring of child pornographers child pornographers who had access to her because she was a vulnerable Catholic child living in Northern Ireland during the Catholic Protestant troubles of the 1960s and 1970s pornographers who selected her particularly because she was a Catholic child and a Catholic child born on a Protestant holiday miss Dunton presented among other things a claim that she was eligible for asylum on the basis of her past persecution alone because of its atrocity the immigration judge did not address this question the immigration judge did not address whether miss Dunton sexual abuse constituted persecution at all but rather focused only on the threat that she received from her persecutors years later when she had the courage to report them to a police force that was unwilling to investigate by in the first instance your honor do you mean when she was being abused as a child there is government official participated there's significant evidence in the record that at that time in Northern Ireland the British government was unwilling to investigate allegations of child abuse and particularly child sexual abuse no she did not we don't know anything about a government official having anything to do with these we do know that some of the abuse that she suffered took place at the Irish estate of a British Lord well yes if that's the story but where does the government come in my client was a very small child whose parents were unwilling to deal with the prospect of her abuse her father was himself a sexual abuser her mother for what reasons we don't know in the record didn't report the abuse and lied to her school about what came to the attention of any government officials what we do know is that in that time period not just once but regularly the British government refused to investigate child sexual abuse and covered it up but how but you know you have this huge gap here where as I understand it you say she's Catholic she was abused therefore she was abused on account of because she was Catholic and they're there you're missing a link to get to the last statement it seems to me in terms of participation the most compelling and direct evidence of that is actually the statement of her persecutors and in many instances this court has found the direct statements of persecutors to be relevant to motivation her persecutors told her that she was special because she was a Catholic child born on a Protestant holiday they told her you're special because you're Catholic and some of her abusers were Catholic correct the family who the family who initiated her to a ring of persecutors that we can presume included some Protestants because of their access to the home of a prominent Protestant British Lord but the mere fact that some of one's abusers are from one's own religion doesn't mean that the persecution wasn't on account of religion no but the big gap in your thing is you haven't got any connection with any government official you just can't allege individuals abuse somebody and therefore they're being persecuted but police inaction and government inaction to stop abuse by private individuals they don't know about it you have no evidence these people knew that any official knew anything was going on assuming the story told by your client is true but we do have evidence that the government at that time was unwilling to prohibit this kind of conduct by others it's the vaguest and most general go ahead see me see if you can get any connection I I've read this we understand what your case is and then the difficulty I have is by the time you get it to a government investigation both she and the mother declined to participate it's not actually clear that she declined to participate there there's a say it was she was overcome understandably and could not assist let's say so there you have the government possibly ready to go forward but they can't go forward on nothing actually there's there's quite a bit of evidence in the record about this and and this is one of the things that makes the immigration judges refusal to listen to any testimony about the police investigation so very troubling on a due process front in some of her written her earlier written statements miss Dunton stated that she was told by the police at first that they couldn't find the people who she implausible given that all Northern Irish are required to register with the police and so they should know where everyone is and then later was told that they were located and they were actually living in Ireland and the police force in Northern Ireland refused to cooperate with the Irish police in order to be able to continue the investigation so there's evidence in the record that the government was actually unwilling or unable to continue to pursue the in a later statement miss Dunton mentions the psychological trauma that she experienced in going through with the investigation the difficulty for her and this is a woman who because of the severity of her abuse suffers from post-traumatic stress disorder then the immigration judge gives her no opportunity to explain which of these which of these statements we should place more emphasis on what the order is of these statements whether she finds out first that the government won't pursue the people who abused her because they won't cooperate with the police force in that country or whether she in fact abandoned it there are actually a couple of avenues of relief available to miss Dunton in this case and one of them is the avenue of relief available on the severity of past persecution alone as we were discussing a moment before the government has not contested that the sexual abuse to which miss Dunton was subjected would would constitute persecution were it motivated on the appropriate ground and it is also uncontested that the immigration judge didn't address either the severity of that prosecution or the fact that persecution I'm sorry or the fact that the acts that occurred when she was a child could be a form of persecution rather the immigration judge focused only on the threat that was made against her and then the immigration judge arrested his decision in part on the fact that miss Dunton had not demonstrated that the police would be unwilling to protect her from her abusers who were now threatening to kill her but again wouldn't listen to any evidence as to the conduct of the police in dropping the investigation that alone suggests that a remand for a full and fair hearing would be appropriate but I would contend to you that my client even with the limited opportunity that she had to demonstrate a well-founded fear for future persecution and that the INS was unable to rebut the presumption of future persecution by providing evidence that she could relocate that's really the other important issue in this case the INS demonstrated only that she had lived in Scotland for some period of time without suffering further persecution it's important to remember that that period that she lived in Scotland was a period of time before she went to the police and reported her abusers before her abusers found out where she was living. Do you think she'd be persecuted anywhere in the British Isles? If the British authorities are unwilling or unable to protect her from her abusers then yes. And then your theory is that this episode and it's unfortunate there's these are terrible things to happen but this episode happened 33 years ago if she went back to any part of Great Britain that she would there's there is it's logical and she's demonstrated she'd be persecuted again. While the sexual abuse that happened when she was a child did happen 33 years ago and would itself because of its severity be sufficiently atrocious to justify asylum on that basis alone and there's a case Lopez Galarza that says that it doesn't matter whether time has passed since the atrocious persecution that isn't relevant to its atrocity. The well-founded fear of future persecution is based on the fact not that 33 years ago she was abused but that she actually went to the police. She was willing to prosecute the people who had abused her and they know that. You indicated that that she had a relatively easy time in Scotland but that was before she went to the police. Was it after she went to the police that she went to reside in England? During the period between going to the police and the threat she was living some in England she was traveling fairly expensively. Is that a yes answer? It's yes and also some other countries. She traveled freely after the investigation came to a halt did she not? She did until she went until she went home for Christmas and her mom talked about her coming home and they figured out where she was and they called her in threat. She did live in England? She did for some of that time yes. And this was after she went to the police? No indication of any threat to her at that time? No there's no indication of a threat to her at that time. The threat came after she went the next time she went home to Northern Ireland. To Northern Ireland but there's no indication that she had any problem when she resided in in England in the record? No there's not. Why wouldn't this be sufficient to substantiate the board's position that she can relocate within the country? I would submit to the court that the fact that her abusers contacted her only when she went home to Northern Ireland to stay with her mother who had made public in the community that she was coming home that she was threatened once they could find her. We have no information whether between 1997 and 1999 they had any information about where she was any ability to find her in order to threaten her and to take further action to carry out their threats. I don't understand the answer to my question. Under the rules this is a factual determination by the board. Under the law of the Supreme Court we have to demonstrate that we're compelled to believe otherwise. Where in the record are we compelled to believe that if she returns to London she's going to have torture and persecution? Well what we know is that the police are unwilling and unable to pursue criminal charges against the people who abused her and are now threatening her. We know that will occur in London England. We know that it's the British government that won't protect her. We know that will occur in London England from the record. There's no reason to believe that they couldn't reach her in London England. I've well exceeded my time. Right exactly why don't we hear from Mr. Verby on behalf of the government. Again your honors it's a case with two issues. First whether Ms. Dutton is entitled to asylum and second whether the judge unfairly limited her ability to present her case. Taking the asylum issue first and starting with the Protestant on Catholic persecution claim. This court has long held that harassment although it's morally reprehensible and for asylum in the United States. As for the threatening phone call the immigration judge correctly determined that an unfulfilled threat without more while it may be relevant for future persecution claims it doesn't establish past persecution. In any event the threat was probably not based or we don't have any evidence that was based on a protected characteristic. The threat looks as though was intended more to force Ms. Dutton to drop her criminal investigation and was more akin to witness tampering or obstruction of is not a basis for asylum either. Turning to the sexual abuse Ms. Dutton suffered it was harmful and it was tragic and no one denies that but there's no indication that it was perpetrated on account of a protected characteristic nor is there any evidence that it was perpetrated by anyone within the government or that the government is unwilling or unable to protect Ms. Dutton from her would-be persecutors. As again she never reported these incidents we have no evidence that the British government is unwilling or unable to protect her but the immigration judge did enter an alternative finding that even if she didn't suffer past persecution the government rebutted the presumption of well-founded persecution by showing she could move to another part of the United Kingdom. She lived in Scotland for seven years without incident. She lived also in England for a period of time without incident. So we believe that the Board of Immigration Appeals and the immigration judge had it right in this case and we ask that the if there are no further questions I conclude. If you need a moment for rebuttal we will give you a minute but I think we have your argument in mind but you're welcome to take a minute for rebuttal. Just one additional point the threat itself was actually on a protected ground. Number one if the abuse 33 years ago was on a protected ground and the threat was in order to keep that abuse from forming the grounds of prosecution for the abusers that would be on a protected ground and since then Ms. Dunton married a Protestant and one of the things that her abuser mentioned during the threat was that he would send her to join her dead Protestant husband creating additional evidence that it was a threat on a protected ground of religion and arguably the political opinion or religious opinion of engaging in a mixed marriage. Thank you I like to ask you I don't understand our pro bono program but how did you get this case in effect? My understanding is that the staff attorneys select cases as eligible for the pro bono program and then there are a group of regional coordinators volunteer attorneys in various cities. So our staff selected this case and they sent it to Arizona? Yes my understanding is the cases usually go to the place where the facts arose. My client lives in southern Arizona and was in front of an immigration judge. After the selection of this case it goes there and then how does it get to you? There's a volunteer attorney at a law firm in Phoenix who rounds up volunteers basically to take these cases. My understanding actually in addition to the staff attorneys picking the cases is that pro se petitioners can request inclusion in the program and I believe my client did so. And then did you volunteer or how did you get into it? I volunteered my firm has an established relationship with the pro bono program. We take a few cases a year at least and the coordinator in our area knows that so he calls us up and tells us when he has a case. Thank you and thank you for your assistance. Case of Dunton versus Ashcroft is submitted. The next case for argument is Davis versus Ignacio.
judges: Wallace, Noonan, McKeown